WERDEGAR, J., Concurring and Dissenting.
I concur in the plurality’s affirmance of the judgment of guilt and most of its reasoning. I write separately concerning the sanity phase of trial only to address defendant’s claim of Doyle-Greenfield error (see Doyle v. Ohio (1976) 426 U.S. 610 [96 S.Ct. 2240, 49 L.Ed.2d 91] (Doyle); Wainwright v. Greenfield (1986) 474 U.S. 284 [106 S.Ct. 634, 88 L.Ed.2d 623] (Greenfield)), which I believe the plurality incorrectly rejects, although I conclude the error is harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 10 A.L.R.3d 974].)
I respectfully dissent, however, from the plurality’s affirmance of the death sentence, because I conclude the trial court committed significant error in ruling on the automatic application to modify the verdict. (Pen. Code, § 190.4, subd. (e); further undesignated statutory citations are to this code.) In my view, remand is necessary to permit the trial court to rule on the application anew, having a correct understanding of the statutory aggravating and mitigating factors (§ 190.3).

Doyle-Greenfield

Defendant argues the prosecutor, over defense objection, violated the principles articulated in Doyle, supra, 426 U.S. 610, and Greenfield, supra, 474 U.S. 284, by cross-examining defense witnesses to elicit testimony that, on the day after his arrest, defendant told a jail social worker, “I am not going to talk to you. My lawyers told me not to talk to you and I’m not going to answer any of your questions.” The evident purpose of this line of cross-examination was to show that defendant’s postarrest uncommunicativeness, which was one of numerous behaviors the defense adduced in support of the diagnosis of schizophrenia, was voluntary and reflected not *199 insanity, but conscious malingering. The plurality concludes the evidence was properly elicited to rebut defendant’s claim his illness rendered him incapable of communicating, reasoning that, because defendant had introduced evidence of his uncommunicativeness to prove he suffered from a mental illness, the prosecution was entitled to present evidence suggesting a different explanation for defendant’s silence. The plurality suggests defendant’s statement stands on the same constitutional footing as would evidence that his uncommunicativeness stemmed from laryngitis or a vow of silence. I disagree.
Doyle, supra, 426 U.S. 610, established that due process forbids the use of a defendant’s postarrest silence to impeach an exculpatory defense proffered at trial, inasmuch as the Miranda warnings required to be administered after arrest (see Miranda v. Arizona (1966) 384 U.S. 436, 467-473 [86 S.Ct. 1602, 1624-1627, 16 L.Ed.2d 694, 10 A.L.R.3d 974]) carry an implicit assurance that silence will not be used against the defendant and render such silence “insolubly ambiguous” (Doyle, supra, 426 U.S. at p. 617 [96 S.Ct. at p. 2244]). Greenfield, supra, 474 U.S. 284, applied Doyle to a case, like this one, in which the prosecution employed defendant’s invocation of the right to silence to refute his defense of insanity.
In the present case, defendant’s statement (“My lawyers told me not to talk to you and I’m not going to answer any of your questions.”) is not ambiguous. It is, rather, a clear expression of reliance on advice of counsel and an implicit invocation of the privilege against self-incrimination. As such, pursuant to the rule in Greenfield, due process forbids its use to refute defendant’s claim of insanity. That the record before us does not establish that the police informed defendant of his rights has no analytical significance. Nothing in Fletcher v. Weir (1982) 455 U.S. 603 [102 S.Ct. 1309, 71 L.Ed.2d 490], on which the People rely, suggests that the identity of the person who provides a defendant with Miranda warnings should be decisive of admissibility where it is clear the defendant remains silent in reliance on his Miranda rights.
Unlike the plurality, I find this case distinguishable from United States v. Robinson (1988) 485 U.S. 25 [108 S.Ct. 864, 99 L.Ed.2d 23] (Robinson). In that case, the high court rejected a claim of Griffin error (see Griffin v. California (1965) 380 U.S. 609, 614 [85 S.Ct. 1229, 1232-1233, 14 L.Ed.2d 106] [violation of Fifth Amendment for the prosecutor to argue or the trial court to instruct the jury that the defendant’s failure to testify is evidence of his guilt]) based on the prosecutor’s comment, in closing argument, that the defendant, who did not testify, “ ‘could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, *200 throughout, the opportunity to explain.’ ” (Robinson, supra, 485 U.S. at p. 28 [108 S.Ct. at p. 867].) The court reasoned the comment was a fair response to defense counsel’s argument that the government had unfairly denied defendant the opportunity to explain his actions. (Id. at p. 31 [108 S.Ct. at p. 868].) Similarly, in People v. Austin (1994) 23 Cal.App.4th 1596, 1611-1612 [28 Cal.Rptr.2d 885] (Austin), the Court of Appeal recognized the prosecution’s right to elicit evidence of the defendant’s post -Miranda silence as a fair response to the defense’s implication that the police had not afforded defendant the opportunity to make a full statement. Robinson and Austin make clear a defendant may not assert the privilege against self-incrimination to bar the prosecution from correcting an unfair implication that the state has thwarted him from providing an explanation of his incriminating conduct. Those cases do not, however, hold that evidence of a defendant’s invocation of the right to remain silent is admissible whenever it might be useful to the prosecution’s case. Such a conclusion obviously would, in effect, abrogate Doyle and Greenfield.
As in Greenfield, here the prosecutor elicited testimony concerning defendant’s invocation of his rights in order to show that, notwithstanding evidence of his severe mental illness, defendant was malingering. Finding the testimony “highly relevant,” the plurality simply glosses over its context.[1] In so doing, the plurality errs.
I would not, however, find the error in this case requires reversal. Because the jury heard considerable other evidence from which it could conclude defendant was malingering, I see no reasonable possibility the brief reference to defendant’s invocation of his rights influenced the sanity verdict. Dr. Mertz, the jail psychiatrist, testified that correctional officers’ notes indicated defendant behaved more normally when psychiatric staff were not present. Other psychiatric experts acknowledged they had diagnosed defendant as having antisocial personality disorder evidently predating his psychosis, and the testimony of various witnesses suggested defendant rarely *201 complained of auditory command hallucinations until after criminal charges were instituted against him. The jury learned that Dr. Lamb, who evaluated defendant for disability benefits during February 1983, concluded defendant was malingering. Dr. Graham, who saw defendant in November 1983, likewise testified he suspected defendant of malingering in an attempt to obtain disability income because defendant lied and was evasive. In light of all the evidence, reversal of the sanity judgment is therefore unwarranted.

Automatic Application to Modify Verdict

The trial court’s remarks in the course of its ruling on the automatic application to modify the verdict (§ 190.4, subd. (e)) reveal its apparent misunderstanding of several of the statutory sentencing factors, most significantly section 190.3, factor (h) (whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect). Because virtually defendant’s only hope of avoiding a death sentence was to try to show his mental illness was so severe the ultimate penalty was unjustified, I cannot confidently conclude “that any misunderstanding ‘had no impact on the court’s decision to deny the motion’ ” (People v. Cooper (1991) 53 Cal.3d 771, 848 [281 Cal.Rptr. 90, 809 P.2d 865]). Under our duty to make an independent review of the ruling (People v. Ashmus (1991) 54 Cal.3d 932, 1006-1007 [2 Cal.Rptr.2d 112, 820 P.2d 214]), I would vacate the death sentence and remand for a new hearing on the application.
With respect to section 190.3, factor (d), whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance, the trial court had this to say: “There is credible evidence that the offense was committed while the defendant was under the influence of a mental and emotional disturbance, but the Court is not prepared to find that it was of such extreme or emotional [sic\ disturbance to justify his acts. [¶] There is further evidence that clearly establishes the defendant knew what he was doing and that the murders were in fact—and that he was wrong when he committed the murders.” The court gratuitously added defendant would not have met the American Law Institute standard for a finding of legal insanity, if that standard had applied. The court concluded: “But I am finding that, and am considering the fact that there was evidence of some mental and emotional disturbance. The Court is considering that as a mitigating factor, although it is a slight mitigating factor.” (Italics added.) Although the court thus ultimately accorded some “slight” mitigating weight to factor (d), its allusion to the American Law Institute standard and its comment that defendant’s mental or emotional disturbance *202 did not “justify” the crimes and that defendant knew he was wrong when he committed them betray a tendency to consider the mitigating evidence of defendant’s mental and emotional disturbance in terms appropriate to a sanity determination, but off the mark in the sentencing process.
More disturbing in its importation of the standard for sanity determination into the process of capital sentence review was the court’s discussion of section 190.3, factor (h), which, as noted above, focuses on whether or not, at the time of the offense, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the effects of intoxication. The trial court stated: “Here the court finds there is credible evidence to show that the defendant did in fact appreciate the criminality of his conduct, even though he suffered from a mental disturbance. The defendant, following his brutal attack on Michael Corbett, when fleeing the murder scene, conveyed by his words and acts his appreciation of the wrongfulness of his acts. His mental disease or defect was not of such a magnitude that it outweighed his ability to distinguish right from wrong and to appreciate that what he was doing was in fact wrong. Thus, the Court finds this is not a factor in mitigation but rather a factor in aggravation.” (Italics added.)
The court erred in focusing on the question whether defendant’s mental illness “outweighed” his ability to distinguish right from wrong. That question may be relevant to the sanity phase, but it is not the salient inquiry in the sentencing phase. Rather, the sentencer must consider whether defendant’s mental illness impaired his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. An impairment is simply a diminution or lessening; thus, section 190.3, factor (h) directs the sentencer to consider in mitigation any lessening, due to mental disease or defect, of the defendant’s capacity to appreciate the criminality of his acts or to conform his conduct to legal requirements. Obviously, evidence of mental illness falling short of legal insanity must be considered in mitigation if it had such an effect on the defendant’s capacities, for factor (h) otherwise would be nugatory.
It is no criticism of the jury’s verdicts to say the psychiatric evidence in this case clearly showed defendant’s mental illness must have impaired to some extent his abilities within the contemplation of section 190.3, factor (h). Mental health expert witnesses in virtual unanimity diagnosed defendant as psychotic. Physicians (recall that most of the offenses took place at the University of California at Davis Medical Center) evidently figured prominently in defendant’s delusions of having had a drill bit or other metallic object implanted in his ear. There was abundant evidence showing how *203 poorly defendant functioned both before and after the offenses, and the record reflects that defendant required and tolerated massive doses of neuroleptics. In my view, the trial court erred in failing to accord some mitigating weight to this factor.
Compounding its evident misunderstanding, the court further erred in treating section 190.3, factor (h), which can only mitigate, as aggravating. Had the prosecutor rather than the court uttered this comment, we would have no trouble labeling it Davenport error. (See People v. Davenport (1985) 41 Cal.3d 247 [221 Cal.Rptr. 794, 710 P.2d 861].) The court repeated the error in its discussion of section 190.3, factor (j), whether or not the defendant was an accomplice and his participation was relatively minor. (See People v. Hamilton (1989) 48 Cal.3d 1142, 1184 [259 Cal.Rptr. 701, 774 P.2d 730] [factor (j) as mitigating]; but see People v. Proctor (1992) 4 Cal.4th 499, 553 [15 Cal.Rptr.2d 340, 842 P.2d 1100].)
Although in ruling on a verdict modification motion a trial judge must make an “independent” determination whether imposition of the death penalty upon the defendant is proper, independence in this context refers to according the evidence the weight the judge himself or herself believes it deserves, in light of the applicable law (which the jury, having been correctly instructed, presumably followed). (See People v. Clair (1992) 2 Cal.4th 629, 689 [7 Cal.Rptr.2d 564, 828 P.2d 705].) To the extent this trial court, in deciding the motion, was applying rules of law different from those with which the jury had been instructed, its method contravened section 190.4, subdivision (e). The court’s remarks concerning section 190.3, factor (h) indicate it did indeed apply a standard different from that given the jury.
The plurality concludes any misunderstanding on the trial court’s part had no impact on its decision to deny the motion, because it stated that “the aggravating circumstances far outweigh any of the mitigating circumstances.” But because the trial court erroneously believed the aggravating circumstances included defendant’s mental illness, its statement does not inspire confidence in the ruling.
I would vacate the judgment and remand for a new hearing on the automatic motion under section 190.4, subdivision (e), so that the trial court can correctly apply the statutory sentencing factors. I express no view as to the proper outcome of such a hearing.
Brown, J., concurred.

 To the extent the plurality (plur. opn., ante, at p. 174) reads Greenfield as only precluding the use of evidence of the accused’s postarrest silence to show he possessed the mental acuity to understand his constitutional rights, the plurality is mistaken; Greenfield cannot reasonably be read so narrowly. To the extent the plurality is suggesting the prosecution in this case did not adduce the evidence of defendant’s statement to show that, contrary to his claim of insanity, he possessed mental acuity, it is likewise mistaken. The record reflects that such was indeed the prosecutor’s intent in eliciting the testimony. At a sidebar conference at which this issue was argued, the prosecutor stated: “Come on. You guys put on nurse Rumsey day after day on how she knew [defendant], supposedly knew [defendant], has testified six or seven months [defendant] doesn’t say a word to the psychiatric staff, and, you know, there is evidence from day one where he was lucid, where he tells these people, ‘My lawyer told me not to talk to you. I’m not going to talk to you.” (Italics added.) Plainly, the prosecutor’s aim went beyond merely establishing that a reason other than mental illness accounted for defendant’s silence; rather, he sought to refute the evidence that defendant was legally insane. The use of defendant’s statement for that purpose contravened Greenfield.